Good morning and welcome to the Ninth Circuit. Judge Schroeder and Judge Miller and I would like to welcome all counsel who are here today. We also want to just ask you to, we've got four arguments set for today, so just pay attention to the clock, let us know if you want to reserve any time for rebuttal and try and sum up as the time's expiring. Once the red light goes on, the time still counts, but it counts upwards, that's an indication that the time is done. We're going to go ahead and set, go ahead with our first case set for argument, which is Gadsden v. McGrath, and that case is set for ten minutes, so go ahead, counsel may. May it please the court, my name is Morris Hill, I am representing Mr. McGrath, I'd like to please reserve two minutes for rebuttal. The issue is whether a reasonable person in Deputy McGrath's position would know that what he did violated clearly established law, not at a high level of generality, but under the specific circumstances of this case. Keeping in mind that in the Sandman case, the Supreme Court said that it's important for deputies, for jailers to have flexibility on the ground judgments regarding safety and maintaining order, and nothing is more important in the jail than maintaining everyone's safety. So, counsel, let's say that we agree with you, that in theory, the statement of law has been stated at too high of a level of generality. That doesn't mean that we don't need to go and look at the comparison in these cases, and there's some prior cases that suggest that he still should have known here. I mean, there was some, can you address that? Because there were some inconsistencies in how he applied the rule. He said they were minor. Why can't we say, even if we interpreted it at a more granular level, that if you're doing a minor rule and applying it inconsistently, that's enough, and that's clearly established. Understood. One of the things we should think about is whether, to what extent are comparators even relevant in this particular situation. The analogy I would draw is to the Neibs case, Neibs v. Bartlett, in which the Supreme Court held that as a general rule, a plaintiff in a retaliatory arrest claim must prove absence of probable cause, and that using comparators is a narrow exception to that rule. And they give the example, for example, of you don't arrest the person for, typically a person is not arrested, for instance, for jaywalking, even though there might be probable cause to arrest. Now, it may make a difference whether the person jaywalking. Let's assume that you're correct about that. If a person's normally not arrested for jaywalking, and then he files a complaint against the police, and he is arrested for jaywalking, why doesn't that suggest that there's something odd about this pattern, perhaps even for qualified immunity? That would be something that would be suspicious, but that's not the facts of our case, because we actually don't have a complaint that's been filed against the... But we have a... I thought we had a... A request for a form, so we can file a complaint. We have a request for a form. In essence, what we have is somebody who mounts off at a deputy, uses a little profanity, and then says, you're a bully, I want an I.A. form. Now, does combining a request for an I.A. form with a rules violation put some sort of principle shielder on you to say that whatever discipline might be imposed on you, you're protected from, or you get damages? Is that what you're relying on, is that it was a request for a form as opposed to a complaint, as opposed to... You're saying it would be different if he'd filed a grievance form? Well, I'm just pointing out he didn't, at this point, did not file a grievance form, but I don't think that's the pivotal distinction here. The pivotal distinction is he combines his request for an I.A. form, or his complaint, whatever you want to call it, his disciplinary complaint, he combines it with his rule violation. Now, if you're going to... Who does? Who is he? He is Mr. Gadsden. Mr. Gadsden combined his rule violation, which was profanity against the deputy, with a request for an I.A. form. All happened at the same time. Yeah, well, I don't quite understand your argument, because what the district court said was the issue here is whether he was disciplined because he violated the rules, or because he asked for a form because he was going to file a complaint. That's a factual issue. That's what the district court said, and therefore, this case is about a factual question. You would be right if he was motivated by this, and the plaintiff would prevail if he was motivated by that.  Please understand, we're going with the district court's interpretation of whatever the district court accepted as the undisputed facts, we accept, too. But the undisputed facts of this case are that Mr. Gadsden combined his violation with a request for an I.A. form. That happened at the same time. That's not quite true, because the initial request for the form was then, but then there was sort of the later, you know, some hours later, right, he was asked, do you still want the I.A. form? And at that point, he said yes, and then Mr. McGrath said, okay, you're being transferred. So I mean, taking the facts in light most favorable to the plaintiff, like, seems like that was the triggering event. But should the fact that that exchange took place hours later, should that put some type of immunity over Mr. Gadsden to say, okay, now you can't do anything to me because you have mentioned that I requested an I.A. form? Does this create an invisible shield over a prisoner to say, my rule violation doesn't count because now you've said something about requesting an I.A. form? Well, and that's why, to me, for purposes of qualified immunity, this comes back to what did the prior cases say on their facts? Not the general law that they state, but what do they say on their facts? And I mean, I think you can draw a conclusion that they should have been on notice here, at least that for, look, I get your point. If he had beaten up another prisoner, that's not a minor rules violation. But here, the rules violation was he swore at the correctional officer. Is there more? Help me understand. Was there more than that on the rules violation? Okay, we're talking about comparators again, and there's no comparator. I want to know what Gadsden's rule violation was here. He swore at the officer. Verbally, well, it's cussing, of course, but it's also verbally confrontational with the  Okay. So he tells the officer, your ability, the officer says, he says, F you, and the prisoner says, he says, this is bullshit. One way or the other, he's using profanity on the officer. And in the same exchange, he says, I want an IA form. So he's combining his request for an IA form with his rule violation. Now, listen. I understand it, but come on. Are you telling, I want to know, do they put, do they do the same sanction to every prisoner that uses profanity towards? We have no evidence that they don't. That's the plaintiff's burden, and the plaintiff could have produced comparators if there was any, if there were any. Well, I think they've, I thought they had. I thought they said that this was not, that they couldn't find, well, let's set that aside. For purposes of qualified immunity, why don't you come back to which cases, why you think there's no comparator? The reason why is because none of the, none of the, either the comparators that were cited by the district court and cited by the plaintiff in this case, or the cases that were cited by the plaintiff in the briefing, none of them involve a case where a prisoner who got confrontational, used profanity on a deputy, or on a jailer, simply had a grounds for retaliation lawsuit based on that, and therefore, it's not clearly established law. Okay. Do you want to reserve? Yeah. I see them out of time. Yeah. No, you're not out of time. You can reserve. I did reserve. Yeah. No, you've got a minute and 39 seconds for rebuttal.  Thank you. We don't subtract. I get confused. No, you're good. Yeah. But that's the, that's the whole thing. You know, the, the idea is that- Do you want to reserve your remaining time for rebuttal? I'll do that. All right. Thank you. Thank you. Good morning, Your Honors. May it please the court. I think the thrust of the court's questions so far have kind of hit on the important point, which is that this is largely a factual argument, although appellant frames it as a legal one. Well, but, but see, this is, this is a problem in qualified immunity, because we've been chastised many times by the Supreme Court for defining the right at too high of a level of generality.  Our prior cases seem to have done that. They've basically said, it is clearly established that you can't retaliate against a police officer. You would agree that we can't just take that statement. If we took that statement on its face, then any time there was a retaliation claim, you would never, there would be no qualified immunity for a retaliation claim. Well, actually, I think retaliation is different than other forms of civil rights abuses that are subject to qualified immunity, such as excessive force or something like that, in the sense that there is no appropriate form of retaliation, right? It's not like a shooting, say, where it might be appropriate in this context, but it's not appropriate in that context. Retaliation is always wrong. Yeah, but the problem is qualified. The whole purpose of qualified immunity is to put the officer on notice that he can't take a certain action. There has to be some case law that says, in given this situation, I'm on notice that I can't take administrative action against him. Right. So, maybe you can help me out, because I think there are cases that support us on the granular level, and maybe you can walk through those, because ... Yeah, I think, let's assume that you're right and that the rule needs to be more granular. I think Shepard v. Quillen is very helpful. The response is directly to the allegation that the plaintiff in that case is going to report the correctional officer. Austin v. Terhune is also very helpful. The facts are almost exactly like what occurred here, where there's an interaction between an individual and a control room and an inmate, and then there is a follow-up conversation, much like what occurred here, which sort of makes it more clear that what's going on is ultimately retaliatory. And those are just two of a dozen cases that are directly on point, and while it's true that the rule has been articulated relatively generally, this is not some kind of outlier case. Can you remind me, in the cases you're citing, was there a claim by the officer that the inmate had, in fact, engaged in misconduct in those cases? Yes. But the interesting thing about Shepard v. Quillen, for example, is that the very act that the inmate is disciplined for is the act of reporting the correctional officer. And so that's very much akin to what occurs here, where Deputy McGrath cites, in his own incident report, the fact that my client requested an IA form, and he's then... So what if, in requesting the form, he'd actually struck the police officer? Yeah, that's different facts, no question. Okay, but so, I mean, how do we do that? Because you could also say, well, that's retaliation, and so therefore there's no qualified immunity. I mean, if we take this at too high a level, you could never discipline him. And that goes to the defendant's concern that, I mean, if we do that, then we incentivize them always to file these grievances, because they basically get, they can undermine qualified immunity. So how do we define that? I mean, I think the way to do it is to say, look, this was a minor violation. There's a difference between minor violations and major violations, but I'd be interested in how you conceptualize this. Well, I come back to the idea that the facts are to be viewed in the light most favorable to my client, as the non-moving, and the court found here that there is evidence of retaliation. So yes, sure, there is an ostensibly neutral... But that's my concern, is that just because there's evidence of retaliation cannot, on its face, be enough to violate, or to get rid of qualified immunity. It's not just retaliation, it's retaliation for a particular kind of conduct, isn't that correct? Yes. In this particular kind of conduct, the cases say you can't retaliate. Right, exactly. And there is not, and this is what I think is odd about Appellant's position, they seem to be arguing that there's some ambiguity about when it's appropriate to retaliate against inmates. It's never appropriate. Well, I don't see that. I don't, I mean, maybe that is their position, but I see it more as what facts, if I'm an officer, and I'm saying, look, there was a rule violation here. It was in conjunction with a request for a complaint. What's the level that, I mean, what can I do? You say, oh, well, clearly, if he hit him, you could throw him in, you know, what if he threw a pencil at him? Could he write him up for that rule of violation? I'm trying to draw a distinction between... Well, but would that be retaliate, would that be, would that, in your mind, if the prisoner threw a pencil and said, give me my form, and threw a pencil at him, and then they put him in, you know, segregation, would that be retaliation, and they would be denied qualified immunity? I think these hypotheticals are kind of difficult to parse because retaliation is so subjective. Isn't that the whole point of qualified immunity? That's why I'm asking these questions. The officer has to know what he can do, and you keep saying, well, you can't retaliate, and the officer's like, well, thank you, but what does that mean? I mean, you have to have a prior case that puts the officer on notice that he can't take that action. You can't just say retaliation is enough. Your Honor, it's not taking particular actions. It's acting with a particular mental state, and the mental state is retaliatory animus, and the case law on that is crystal clear, and it has been for decades. So yes, there are different... So what was it here that showed the mental state for retaliation? Well, there's quite a few facts. We already alluded to the follow-up conversation in which Deputy McGrath asked my client, do you still want the IA form? And when my client says yes, he says, well, roll your property up, you're being transferred. But it's not just that. It's also, for example, the history of how Deputy McGrath responded to other situations. And Mr. Hill said a moment ago, there's no facts. There's plenty of facts. We deposed the deputy, and we also obtained his disciplinary records from many other incidents that he responded to, many of which involved analogous facts, and he did not take the type of steps he took in this case. Most of the time, in fact, he did nothing. But you would agree that we have to look to other cases. So you could still state a claim for retaliation. You could show evidence of retaliation, and they could still get qualified immunity, or you don't think that's ever possible? No, I mean, I won't say it can't occur, but I would say... When can it occur? But that's not really a proposition you need to embrace, is it? No, I mean, I think on these facts, there's no question that a reasonable officer in this position was on notice. And I guess we just keep coming back to what's the cases. And I think you've given us them. I don't know if you want to go back to this. No, I mean, I think I'll sort of submit based on what I've said already. I think the case law is clear, and that a reasonable officer in this position would have known this was illegal. And to be clear, the retaliatory motive has to be a but-for cause of the action. It has to be a substantial factor, I believe. Oh, I thought Niav's, or Niav's against Bartlett said but-for, but... Okay. You think it's... I mean... It wouldn't make a difference. I think that makes it... I think that makes your answer to some of Judge Nelson's hypotheticals more difficult, but...  All right. Thank you very much. The plaintiff emphasized, or there was an emphasis on the mental state of Deputy McGrath, and that we should be looking at the mental state. I'd like to draw the court's attention to a statement from the Sandoval v. County of San Diego opinion from 2021, quote, we are not aware of a single case in which we have examined the defendant's mental state in assessing the clearly established law prong of qualified immunity. Now, that's interesting, but that was for a... What was... Remind me the claim in Sandoval. It was a Fourth Amendment? No. It... The case involved a vastly different set of facts, and they're not really... Right. I'm just trying to figure out how far to take that statement. It was a medical care claim, and it involved, you know, to what extent is... So it was an Eighth Amendment violation, basically. It was either Eighth Amendment or it was one of those Fourteenth Amendment pretrial detainee things, and I can't remember offhand which one it was. But the point is that mixed motive, you know, when we're talking about mixed motive, if McGrath had a mixed motive of retaliation, plus he was also doing something he was entitled to do anyway, he should still be entitled to qualified immunity, because otherwise, you cannot... Again, you've got the problem of prisoners knowing that they can immunize themselves, put this shield of immunity on themselves for rule violations, for mouthing off against deputies, for challenging deputies. Order is important in an institution, in a jail. Once you get the word out that all you have to do when you don't like something a deputy did is cuss them out, and if they do anything, if they even transfer you to another institution, which is what McGrath did, then you get damages for that.  Thank you, counsel. Thank you. We appreciate both counsel's arguments in the case. The case is now submitted. Thank you very much.
judges: SCHROEDER, NELSON, MILLER